**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOHN LEE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-06-1013 |
| | * | |
| DVM, LYNN FENWICK, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff John S. Lee ("Plaintiff" or "Lee"), a former employee of Defendant Breton Veterinary Hospital ("BVH") and Dr. Lynn Fenwick ("Dr. Fenwick") (collectively "Defendants"), has brought this employment discrimination action against BVH and Dr. Fenwick alleging discrimination based on race in violation of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e et seq. and Article 49B of the Maryland Annotated Code, sexual harassment and retaliation, failure to prevent sexual harassment, and wrongful termination. Currently pending before the Court is Defendants' Motion to Dismiss and/or, in the alternative, for Summary Judgment [3]. Plaintiff contests this motion. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. On October 26, 2006, the Court held a hearing concerning the motion and heard from all the parties. Having considered the arguments of Plaintiff and Defendants, this Court will deny-in-part and grant-in-part Defendants' motion to dismiss and/or, in the alternative, for summary judgment for the reasons set forth more fully below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff started working for BVH on or around September 20, 2004, as a Nurse's Assistant. Plaintiff alleges that on one occasion, while he was pushing a cart during the regular course of his

duties, he felt the presence of a body pressing his back side.  Plaintiff claims that on another occasion, he was cleaning the triage area when a co-worker shined a flashlight on his rear, moving slowly in a grinding manner, simulating the object in a sexually suggestive manner.  Plaintiff further contends that he complained to his immediate supervisor, Ms. Earlene Hile ("Hile"), about the incident but nothing was done about the situation.  Plaintiff also asserts that another co-worker made comments about having sexual activities with her partner in Plaintiff's presence.  Furthermore, Plaintiff claims that a co-worker referred to him as a "Boy."  Finally, Plaintiff argues that he was terminated for failing to come to work, although a white/female co-worker, who allegedly did not come to work, was not terminated.

On February 28, 2005, during a meeting discussing a previous written warning for failing to appear to work, Plaintiff made a reference to Hile and Dr. Fenwick  about an incident by a co-worker with possible sexual overtones.  As a result of the concerns raised by Plaintiff, Dr. Fenwick and Hile immediately responded by conducting sexual harassment meetings with all of the BVH employees and personnel, including Plaintiff.  The management team met with each employee, to discuss sexual harassment, on Tuesday, March 8, 2005 and Thursday, March 10, 2005.  On March 11, 2005, Plaintiff was instructed by Dr. Fenwick and Jennifer Rentschler, a Nursing Technician, to walk a dog.  Plaintiff immediately became violent, angry, and aggressive towards both Dr. Fenwick and Ms. Rentschler, necessitating physical separation by another employee.  Later that evening, the decision was made that due to concerns of a reoccurrence of Plaintiff's violent conduct, Dr. Fenwick exercised her discretion to terminate his employment in order to maintain a safe work environment.

In March 2005, Plaintiff timely filed a Charge of Discrimination with the Maryland

2

Commission on Human Relations (hereinafter "MCHR"), a deferral state agency of the Equal Employment Office Commission alleging discrimination based on race, alleging discrimination based on race and gender. A right to sue letter from the EEOC was received, and in August 2005, Plaintiff amended his Charge of Discrimination to include a count for harassment and retaliatory conduct. On April 21, 2006, Plaintiff commenced this action alleging 1) discrimination based on race (Title VII and Article 49B of the Annotated Code of Maryland), 2) sexual harassment and retaliation, 3) failure to prevent sexual harassment, and 4) wrongful termination. Currently before the Court is Defendants' motion to dismiss and/or, in the alternative, for summary judgment. Plaintiff opposes the motion. The motion is ripe, and the Court now issues this opinion.

## STANDARD OF REVIEW

### *Motion to Dismiss*

A court should deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d

713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").   Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Therefore, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

***Motion for Summary Judgment***

Where matters outside the pleadings are considered by the Court, however, Defendant's motion to dismiss will be treated as one for summary judgment under Rule 56.  *See* Fed.R.Civ.P. 12(b), (c).  Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case.  *Celotex*, 477 U.S. at 325.  When faced with a motion for summary judgment, Rule 56(e) requires the non-moving party "to go beyond the pleadings" and show the existence of a genuine issue for trial, by way of affidavits, deposition testimony, or answers to interrogatories.  *Id.* at 324; *see also Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine

dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

### Count I: Racial Discrimination

### *I.)    Applicable Title VII Principles*

Under Title VII it is "an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... race or ... national origin." 42 U.S.C. §2000 e-(a)(1).  In a Title VII claim, Plaintiff must either: 1) present direct or circumstantial evidence or discriminatory animus; or 2) proceed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *Hill v. Lockheed Martin Logistics Mgmt. Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004), *cert. dismissed 543 U.S. 1132 (2005); Diamond v. Colonial Life & Accidents Ins., Co.,* 416 F.3d 310, 318 (4th Cir. 2005).  Regardless of the type of evidence Plaintiff offers, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Hill*, 354 F.3d at 286.

In this case, Plaintiff has not identified any direct evidence of discriminatory intent, and thus the *McDonnell Douglas* scheme of proof applies.  Plaintiff must make out a *prima facie* case of discrimination, which in turn, raises a preliminary inference of discriminatory intent.  To do so, Plaintiff must show that: 1) he is a member of a protected class, 2) he was subject to an adverse employment decision, 3) at the time of the adverse employment decision he was performing his job duties at a level that met his employer's legitimate expectations (or he was qualified for the position

he sought), and 4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Hill,* 354 F.3d at 285; *see also Dugan v. Albermarle County School Board*, 293 F.3d 716, 720-21 (4th Cir. 2002) (applying *McDonnell Douglas prima facie* case requirements in a reduction force case).

If Plaintiff establishes a *prima face* case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for its employment action. *McDonnell Douglas*, 411 U.S. at 802. Once Defendants articulate their legitimate, nondiscriminatory rationale, the inference raised by Plaintiff's *prima facie* case is extinguished. *St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 507 (1993) (once the employer meets its burden of production, the inference of discrimination "drops from the case"). Plaintiff must then show that Defendants' proffered explanation for its action is not the true reason, but instead, is merely a pretext for discrimination. *Id.* at 507-08*; Hill*, 354 F.3d at 285; *McDonnell Douglas*, 411 U.S. at 804. At this point, Plaintiff must show that Defendants' legitimate, nondiscriminatory reason is "unworthy of credence" or Plaintiff must offer "other forms of circumstantial evidence sufficiently probative of discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). Throughout this burden-shifting scheme, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cnty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In the present case, Plaintiff fails to set out a *prima facie* case of racial discrimination. Plaintiff never asserts that he was terminated because of his race. He mentions, in passing, that he was once called a "boy." However, Plaintiff never makes any further allegations of that incident or any other instance. Furthermore, Plaintiff does not ever assert that he was terminated because of his

race.  Instead, Plaintiff argues that he was terminated because he yelled at Dr. Fenwick, and that his

co-workers also yelled at their employer, yet they have not been terminated.  He leaves the Court

to make the analytical jump that because he is the only African-American employee at BVH and,

incidentally, the only one who was fired, that the termination of his employment must have been

because of his race.  Because Plaintiff fails to make the direct causal link that he was actually

terminated because of his race, he has failed to state a claim of racial discrimination under Title VII.

Accordingly, Defendants' motion to dismiss is granted as to Plaintiff's claim of racial discrimination

under Title VII.

**II.)    *Article 49B of the Annotated Code of Maryland***

Plaintiff further purports to state a claim for racial discrimination under Article 49B of the

Maryland Annotated Code.  As previously noted by this Court, the employment discrimination

provisions of Article 49B "empower only the Maryland Human Rights Commission to initiate

litigation upon an employer's refusal to comply with the Commission's orders ....  The statute does

not create a private cause of action." *Jordan v. CSX Intermodal, Inc.,* 991 F.Supp. 754, 756 n. 1

(D.Md. 1998) (citations omitted) (emphasis added).  *See Parlato v. Abbot Laboratories*, 850 F.2d

203, 205 (4th Cir. 1998); *Malina v. Baltimore Gas and Elec. Co.,* 18 F.Supp.2d 596, 611 (D.Md.

1998) (citing *Jordan,* 991 F.Supp. At 756 n. 1); *Dillon v. Great Atlantic & Pacific Tea Co.*, 403

A.2d 406, 409 (Md.Ct.Spec.App. 1979).  Therefore, this Court finds that there are no genuine issues

of material fact that would enable Plaintiff to obtain relief under Md.Code Ann. Art. 49B.

Accordingly, Defendant's motion to dismiss is granted as to Plaintiff's claim of racial discrimination

under Md.Code Ann. Art. 49B.

**Count II: Sexual Harassment and Retaliation**

**I.)**      ***Sexual Harassment (Hostile Work Environment)***

Title VII provides that it "shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. §2000 e-2(a). Sexual harassment gives rise to a claim of sex discrimination under Title VII. Plaintiff alleges that he was subjected to a hostile work environment. Under the hostile work environment theory, the harasser's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57 (1986). To state such a claim, he must show that: (1) the harassment was unwelcome, (2) the harassment was based on his sex, (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and created an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. *Causey v. Balaog,* 162 F.3d 795, 801 (4th Cir. 1998). Assuming, for the purposes of resolving this motion, that Lee can satisfy the first two prongs of this test, he cannot satisfy the third and fourth prongs.

"[H]arassment is action under Title VII only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create and abusive working environment." *Clark County School Dist. v. Breeden,* 532 U.S. 268 (2001) (internal punctuation and citations omitted). Indeed "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would not find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993). *See also Breeden*, 121 S.Ct. at 1510. To determine whether alleged harassment constitutes a hostile work environment, the court looks to all the surrounding circumstances including "(1) the frequency of

the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating or a mere offensive utterance, and (4) whether it reasonably interferes with [the] employee's work performance." *Smith v. First Union Nat. Bank*, 202 f.3d 234, 242 (4th Cir. 2000) (citing *Harris*, 510 U.S. at 23).

The alleged incidents of harassment in this case took place over the course of a few months. Of the specifically sex-based incidents, Lee has named a few co-workers who touched him on his back side, made comments about his rear end, pointed a flashlight on his behind, made sexually suggestive gestures towards him, and had inappropriate discussions about their own personal sex lives in his presence. The conditions that the Plaintiff lists that have affected his work include eating lunch alone, feeling isolated, embarrassed, and offended, feeling a lack of respect, lamenting from pain and suffering, undergoing extreme and severe mental anguish and emotional distress, feeling intimidated, in addition to feeling oppressed. These incidents, even if taken in the light most favorable to the Plaintiff as true, are insufficient to form the basis for a hostile work environment claim.

The Court cannot on the record before it conclude that the incidents of harassment that can be connected to his employment are sufficiently "severe and pervasive" to constitute a hostile work environment. *See Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994) ("The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial") (citations omitted). Accordingly, Defendants' motion to dismiss will be granted, insofar as it relates to Plaintiff's Title VII claim for hostile work environment.

## II.)    *Retaliation*

The *McDonnell Douglas* burden-shifting analysis discussed *supra*, applies to retaliation

claims as well.  To establish a *prima facie* case of retaliation, the employee must show (1) that he engaged in a protected activity, (2) that his employer took an employment action against him that a reasonable employee would have found materially adverse, and (3) that there was a causal connection between the protected activity and the adverse employment action.  *Hill*, 354 F.3d at 298; *Burlington norther & Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

Plaintiff's alleged protected activity revolves around his meeting with Hile and Dr. Fenwick, when he blew the whistle, so to speak, on his fellow co-workers' sexual harassing activities.  In addition, Plaintiff claims that he asked Hile whether a co-worker's action constituted sexual harassment, immediately following the incident, in which Hile was present, when a co-worker touched his "soft ass."  The Court believes that Plaintiff has successfully established prong one of the *prima facie* case.  In assessing prong two, Plaintiff maintains that the adverse employment action was his termination.  An adverse employment action is one which adversely affects the terms, conditions, or benefits of the plaintiff's employment.  *See Munday v. Waste Management of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir. 1997), *cert denied*, 522 U.S. 1116 (1998).  Plaintiff's contention that he was terminated as retaliation does constitute an adverse employment action.

The third prong of the *prima facie* case requires that in order for Plaintiff to succeed, he must proffer evidence that there was a causal connection between the protected activity and the adverse employment action.  Plaintiff alleges that it is not merely coincidental that he was terminated the day immediately following the sexual harassment meeting proscribed by Defendants, which was initiated as a direct response to Plaintiff's concerns of his alleged sexual harassment by his co-workers.  The Court echoes here what it stated during the motion's hearing, that Plaintiff must state cognizable facts that rise to a *prima facie* claim.  Looking at the facts in the light most favorable to

Plaintiff, and recognizing the inference that possibly can be drawn from the employee meeting held by Defendants, the Court believes Plaintiff has set forth a cognizable claim for retaliation. Specifically, the Court believes that an inference can be drawn from the memorandum written by Defendants that summarized the harassment meeting.  The written memorandum included the dates of the meetings, the list of employees present at the meetings, an explanation of sexual harassment, and the definition of at-will employment.  Again, looking at the facts in the light most favorable to Plaintiff, the Court finds that a discussion of at-will employment incorporated to its meeting addressing sexual harassment, in addition to Plaintiff's subsequent termination of employment the day immediately following the meeting, could infer retaliation.  Therefore, at this early stage where there has not yet been any discovery, the Court cannot grant Defendants' motion to dismiss as to the retaliation claim.  As a result, the Court believes that Plaintiff should have a reasonable opportunity to develop further his retaliation claim.

**Count III: Failure to Prevent Sexual Harassment**

An employer is liable for an employee's actionable sexual harassment of a co-worker if the employer has actual or constructive knowledge that the harassment is occurring and negligently fails to take prompt and adequate remedial action to stop it.  *Mikels*, 184 F.3d 323,329 & n.4 (4th Cir. 1999) ("It is now settled that this failure-to-act-after-notice standard is one for imposing Title VII liability on employers for their direct negligence rather than on *respondeat superior* or other 'imputed' liability principles.").  However, proper application of the *Mikels* test requires that first, Plaintiff must carry his burden of generating an actual dispute of material fact as to whether liability of hostile work environment can be imposed upon Defendants. *See Franklin v. King-Lincoln-Mercury-Suzuki, Inc.*, 51 F.Supp.2d 661, 665 (D. Md. 1999) (finding that once after a hostile work

environment has been established, then the Court must look to the issue of liability).  Therefore,

Plaintiff must first successfully assert a hostile work environment claim before he can impose  that

liability onto his employer.  Since Plaintiff has failed to allege a successful hostile work environment

claim, as mentioned above, he cannot impute liability on the employer for failure to prevent, in

essence, a non-hostile work environment.  Accordingly, Title VII claims against Defendants for

failure to prevent sexual harassment will be dismissed.

## Count IV:  Wrongful Termination

Under Maryland law, an employer may ordinarily discharge an at-will employee for any

reason whatsoever.  *See Adler v. Am. Standard. Corp*. 432 A.2d 464, 467 (Md. 1981).  However,

Maryland recognizes the tort of abusive or wrongful discharge as a "narrow exception" to the

general rule in circumstances where an at-will employee's termination contravenes a "clear mandate

of public policy."  *Id.* at 473.  An employee who asserts that he was wrongfully discharged must

"specifically identify the clear mandate of Maryland public policy that was violated by his

termination."  *Szaller v. Am. Nat'l Red Cross, et al*., 293 F.3d 148 (4th Cir. 2002) (citing *Adler*, 432

A.2d at 470-72).  In order for a mandate of public policy to be well-established enough to form the

basis of a wrongful discharge action, there "must be a preexisting, unambiguous, and particularized

pronouncement by constitution, enactment, or prior judicial decision, directing, prohibiting, or

protecting the conduct in question so as to make the public policy on the relevant topic not a matter

of conjecture or interpretation."  *Id.* (quoting *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md.

Ct. Spec. App. 2002)).  The rationale for placing these limits on what constitutes a "clear mandate

of public policy" is to "limit [ ] judicial forays into the wildnerss of discerning public policy without

clear direction from a legislature or regulatory source." *Id*. (quoting *Milton v. IIT Research*, 138 F.3d

519, 523 (4th Cir. 1998)).

Plaintiff has failed to state a viable claim of wrongful discharge in violation of public policy. First, as a threshold matter, Plaintiff failed to meet the requirement to "plead with particularity the source of the public policy" allegedly violated by her termination. *Porterfield*, 788 A.2d at 245 (citations omitted). The purpose of this requirement is to enable the Court to determine as a matter of law whether the public policy asserted by Plaintiff constitutes a clear, pre-existing mandate. *Id.* (citing *Watson v. Peoples Sec. Life Ins. Co.*, 588 A.2d 760 (1991)). In his complaint, however, Plaintiff merely states, without citation to any case, statute or regulation, that he was terminated for "[his] willingness to question the unlawful treatment he was subjected to while on the job." Plaintiff has, therefore, failed to meet this threshold requirement for stating a cause of action for wrongful discharge in violation of public policy.

To the extent that Plaintiff bases his wrongful discharge claim on Defendants' retaliation, the claim must be dismissed because Title VII already provides a remedy for the alleged wrong. The tort of wrongful discharge is "designed to provide a remedy for such conduct when no other remedy is available ... [i]f the relevant public policy is contained in a statute, and the statute provides a remedy, the tort of wrongful discharge is not available." *Porterfield*, 788 A.2d at 245-46 (citing *Insignia Residential Corp. v. Ashton*, 755 A.2d 1080, 1086 (2000)). As this Court recently noted in *Carson v. Giant Food, Inc. et al*, 187 F.Supp.2d 462, 483 (D.Md. 2002), "[a]busive discharge suits for employment discrimination are generally precluded because federal and Maryland anti-discrimination laws create a civil remedy to vindicate discrimination in employment settings" (citations omitted). Therefore, Plaintiff's wrongful discharge claim, to the extent it is based on alleged retaliation by Defendant against Plaintiff, is also precluded because a remedy already exists

under Title VII and state law.

## CONCLUSION

For all of the aforementioned reasons, the Court will GRANT Defendants' motion to dismiss regarding Plaintiff's alleged discrimination based on race in violation of both Title VII and Article 49B of the Annotated Code of Maryland, Plaintiff's sexual harassment claim, Plaintiff's claim against Defendants for failure to prevent sexual harassment, and Plaintiff's claim for wrongful termination. However, the Court with DENY Defendants' motion to dismiss and/or, in the alternative, for summary judgment as to Plaintiff's retaliation claim. Therefore, this Court will DENY-IN-PART and GRANT-IN-PART, Defendants' Motion to Dismiss and/or, in the Alternative, for Summary Judgment [3]. Defendants are directed to Answer or otherwise respond to Plaintiff's Complaint. Meanwhile, the Court will be issuing a scheduling order. An Order consistent with this Opinion will follow.

Date:   November 30, 2006                                    /s/
                                               Alexander Williams, Jr.
                                               United States District Court Judge